### PACKER v. CHICAGO, L. S. & S. B. RY. CO.

(Circuit Court of Appeals, Seventh Circuit.   April 6, 1922.)

No. 2982.

Railroads ⟨⟩➔383(4)—Pedestrian on track, looking for another train, held negligent.

Decedent, standing on an east-bound track waiting to receive a package from the conductor of a car expected on the west-bound track, when he was struck by an east-bound train, which made a loud noise as it approached and could be seen for a long distance, *held* guilty of contributory negligence, precluding recovery.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by Ellen Mack Packer, administrator of the estate of Charles P. Packer, against the Chicago, Lake Shore & South Bend Railway Company.   Judgment for defendant, and plaintiff brings error.   Affirmed.

The asserted error is the action of the District Court in directing verdict for defendant in error under this state of facts:

Chicago avenue runs east and west through the Indiana municipalities of Indiana Harbor, East Chicago, and Hammond.   White Oak avenue runs into Chicago avenue from the south, but does not cross it.   It is on the west limit of East Chicago and the east limit of Hammond.   Chicago avenue is paved through East Chicago, but not in Hammond.   Defendant in error's double tracks extend along the middle of Chicago avenue until just across White Oak avenue in Hammond, where they curve to the north, leaving the street and thence running west, parallel to Chicago avenue, on private right of way. In East Chicago there are no houses or other obstructions on Chicago avenue for about four blocks east of the west limits.   Beacon street in East Chicago is the first parallel street south of Chicago avenue, and on it are a number of houses from White Oak avenue east.   Wegg avenue parallels White Oak one block to the east and intersects, but does not cross, Chicago avenue.

A daughter of deceased resided for 11 years in a house fronting north on Beacon street near Wegg, and the first east of Wegg.   Deceased, aged 75, still actively engaged in business in Chicago, where he resided, and in apparent

---

full possession of his faculties, frequently visited his daughter at her home, coming sometimes over this and other times by a different route. On a bright January morning about 8:30, deceased, in company with his son-in-law and 5 year old grandson, left the home where he had been visiting for about three days and walked north on Wegg to Chicago avenue, with the intention of meeting a local car which was expected from Indiana Harbor, which lies just east of East Chicago, to receive from the conductor of that car a bottle of medicine which a son at Indiana Harbor was to send by him. This car would come west as far as Wegg, and would then switch over onto the east-bound track by means of a cross-over switch located at or a little east of Wegg. The son-in-law, who was the only witness testifying on that subject, says that they all crossed over to the north side of Chicago avenue, where they were when he last saw them. On separating, the son-in-law walked east on Chicago avenue about four blocks, going into a store to get a newspaper, and on coming out saw an east-bound limited train stopping, and he at once went back. The next the evidence shows of deceased is his dead body lying a little south of the south rail of the east-bound track, some feet east of the east line of Wegg avenue.

About that time each morning a limited train of three cars came along from the west at high rate of speed, not stopping at any of the streets named, and it was testified that on this morning the train came along at the usual time, at speed of from 35 to 40 miles an hour; that there was no sound of a whistle until just before it came to the Wegg avenue intersection, when a sharp blast was blown and the brakes applied, the train being brought to a stop about 900 feet east of Wegg, whereupon the body of deceased was found as indicated. The child was not injured, and there is no evidence of its movements, other than as stated, save that it ran screaming toward home. The front of the car to the right of its center would indicate that at the time of being struck deceased was nearer the south side of the east-bound track. Indeed, he must have been on or close to the east-bound track, to be struck by a car thereon. Clearly he was not on or north of the west-bound track, where he and the little boy were when the son-in-law left them. The evidence does not indicate where the Indiana Harbor car was at this time, save only that it was within a space of two or three blocks east of Wegg. The undisputed evidence is that the train usually, and on this morning, made a very loud noise as it came from the west. The daughter testified that from within her house, over a block away, she heard its roar very distinctly, and that she also saw it perhaps 200 feet west of Wegg avenue. Deceased wore a cap with earlaps, but the son-in-law testified these was not covering his ears. He also testified that, looking west, there was nothing to obstruct the view of an approaching train from one standing on Chicago avenue, for a long distance west of Wegg.

The court directed verdict upon the ground that the undisputed evidence showed deceased's own negligence contributed to the occurrence.

Thomas L. Marshall, of Chicago, Ill., for plaintiff in error.

Vernon W. Foster, of Chicago, Ill., for defendant in error.

Before ALSCHULER and EVANS, Circuit Judges, and LANDIS, District Judge.

ALSCHULER, Circuit Judge (after stating the facts as above). During the few minutes which elapsed between the time deceased had crossed over the tracks to the north side of Chicago avenue and the time of finding his body on the south side of the tracks, there is no direct evidence of his movements. Had he remained upon the north side, and there waited for the Indiana Harbor local car he was expecting, the east-bound limited train could not have struck him. He must have gone back and toward the south side of the street, and have been upon the east-bound track, or just north of its south rail, when he was struck. He was not there on the ordinary mission of

crossing the street, but was expecting to receive from the conductor of the Indiana Harbor car a package which a son had commissioned the conductor to give him. It is evident that the Indiana Harbor local car had not yet come down to Wegg avenue, which was the westerly end of its trip, where it would switch over the east-bound track for starting back east. It was awaiting the passage of the expected east-bound limited before crossing over onto the same track, and undoubtedly it was either slowly approaching or waiting somewhere on the west-bound track until the limited had passed. It does not appear that there was a waiting station or platform at Wegg avenue. Local passengers could get on and off there, as at street intersections generally. It is evident that deceased was intent upon meeting this car, which would come down on the west-bound track and then pass to the east-bound.

The District Court evidently concluded that he was so intent upon meeting this car and upon looking after his little grandson that he was oblivious to his surroundings and the danger of a train approaching from the west. He surely knew that these were double tracks, on which interurban trains were likely to pass, and had he exhibited ordinary care for his own safety he would have been aware that such a train was approaching. His alertness and keenness of vision and hearing; notwithstanding his advanced years, emphasize all the more the absence on his part of ordinary care in this situation. Evidently either the grandfather placed the child out of harm's way, or it instinctively sought a place of safety, since it was not harmed. Such was the experience and capability of this more than ordinarily intelligent man that his manifest preoccupation or oblivion in a place of imminent danger can, in the estimation of human conduct, be attributed only to his lack of due care for his own safety, a condition which prevents recovery of damages for his resultant death.

The judgment of the District Court is affirmed.